12392.   INVESTORS REALTY COMPANY *v.* THOMSON.

1. It being otherwise proved, without dispute, that notice of the same tenor and effect as that contained in the carbon copy of the letter excepted to was given by the plaintiff to the defendant prior to incurring the items of expense sued for, the admission of such copy, if illegal, should be treated as harmless.

2. The verdict in the amount sued for, to wit, $753.80, consisting of items which, under the undisputed evidence, were subject to exact calculation and which must have been so calculated and found by the jury, and being only authorized in the amount of $601.95, the judgment will stand affirmed if the plaintiff in the court below shall write off the unauthorized excess; otherwise the judgment is reversed.

DECIDED NOVEMBER 18, 1921.

Action on contract: from city court of Savannah — Judge Rourke. March 10, 1921.

*Wilson & Rogers,* for plaintiff in error.

*Frank P. McIntire, Simon N. Gazan,* contra.

JENKINS, P. J. The action was for damages resulting from

the breach of a certain specification in a contract for the building of a dwelling house, as follows: " Roofing. The main roof is to be covered with tin shingles of Conklin make, or equal, put on in the best manner; do all necessary flashing and counter-flashing. Flashing at chimneys to be let into reglets in the brickwork, wedged in place, and cemented in with Portland cement. " The petition alleges that soon after the completion of the house the roof began to leak, and notwithstanding repeated notices to defendant to remedy such defect, the leaks continued; that the tin shingles rusted and corroded, and the leaks could only be remedied by laying a new roof; that in endeavoring to stop the leaks and lessen the damage, the plaintiff expended $53.83 in applying a coat of roofing paint, and $100 in restoring to their former condition the ceilings and walls, which were stained and cracked from the leaks; and that he finally incurred an expense of $600 in replacing the original roof with new tin shingles, so as to put it in proper condition as required by the contract. The jury rendered a verdict for the plaintiff in the amount sued for, to wit $753.80. Only two questions are raised by the record, the first relating to the admission of certain evidence as to notice given the defendant of the defect, which is disposed of in the first headnote; the other relating only to the sufficiency of the evidence as to the $600 item.

The defendant's counsel in effect admit that the verdict is proper in so far as it covers the two items amounting to $153.80, and their only contention is as to the $600 item, which was necessarily allowed by the jury in their verdict. It is also in effect admitted that the plaintiff had the right to recover the value of a roof as good as that provided by the specifications, — that is, a roof of " tin shingles of Conklin make, or equal;" but it is contended that, as the evidence shows that plaintiff laid a more costly roof than that required by the contract, the defendant was not liable for the excess cost, and that, as the burden was on the plaintiff to show the proper items of expense, and as he had failed so to do, the verdict as to the $600 item was without evidence to support it. The plaintiff, however, contends that the $600 was a proper allowance under the evidence, not only on account of the increased cost of materials and labor at the time of replacement, above such cost at the time of original construction, but because he had incurred additional items of expense in painting the new roof and in laying

it over tarred paper. His contention is based upon the clause in the specification that the shingles should be " put on in the best manner ;" and he contends that to do this so as to avoid leaks, the shingles should have been painted as well as primed, and laid over tarred paper. The plaintiff testified, without objection, that for such a roof to be laid in the " best manner," painting was required. G. E. Pacetti, one of the firm of roof contractors who laid both the original and the new roof, testified that " the roof should be painted, in addition to the priming coat." C. C. Pacetti, his partner, testified that, while their firm would not paint a tin-shingle roof or lay it on paper unless expressly provided for in the specifications, and while they did not paint the original roof in question except to apply a coat of priming, yet immediate painting after finishing such a roof was " the only thing to make a roof tight, so that it is properly flashed, and these are the things that prevent leaks; " and further that he had advised the defendant's vice-president that " the leakage was due entirely to the fact that the roof had not been painted." As to the use of tarred paper he said: " It is an open question whether paper is to be included or not; some people want it, and some don't; " and he said also that such paper " cannot prevent leaks. " There was thus ample evidence to sustain the plaintiff's contention that painting was a necessary element and expense in laying the roof " in the best manner," as stated in the specification. But there was no proof showing such a necessity for using tarred paper. It was incumbent on the plaintiff to prove that each of the items of expense incurred by him in laying the new roof was necessary in obtaining such a roof as he was entitled to have under his contract. He offered no evidence showing the cost of the several items for the new shingles, painting, tar paper, and labor. Unless there is something definite and tangible in the evidence, by which the unauthorized item for tarred paper can be excluded from the $600 item included in the verdict, such item must be held unsupported by any evidence. While the evidence of the plaintiff fails in this respect, it appears, however, that the defendant's vice-president, W. H. Stillwell, testified that " the difference in the cost of a roof put on like this new roof, and the roof that was specified in accordance with these plans and specifications," was " 35% or 40% more," and that the roof which the plaintiff " now has is worth

$605, which is a superior article, has paint on it and tar paper underneath; it is a more expensive roof to the extent of 40%. " Under the rule that a party's testimony is to be construed most strongly against himself, it may thus be taken that the cost of the new roof to the plaintiff, with paint and tar paper added, exceeded the cost without such two items by 35%, which would make the cost exclusive of those items $448.15, and the cost of such disputed items $156.85. The plaintiff, under this admission, was authorized to recover as much as $448.15. This excluded the proper item of paint, as well as the unauthorized item of tarred paper; and had there been any evidence to show the cost of painting, or any evidence by which such cost might be separated from the cost of the tarred paper, the former item might be recovered. But in the absence of any such proof, the only amount authorized under the evidence is that which the jury could have definitely calculated from the defendant's admission as properly allowable, to which should be added the undisputed items of $153.80, making a total of $601.95. The plaintiff is therefore given the privilege of writing off the unauthorized amount of the finding, to wit, $151.85, from the $753.80 found, at the time the remittitur from this court is made the judgment of the trial court, in which event the judgment will stand affirmed; otherwise, the judgment is reversed.

*Judgment affirmed, with direction. Stephens and Hill, JJ., concur.*